FILED

07/12/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0688

DA 15-0688

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 166

CARL E. ALGEE,

Plaintiff and Appellant,

v.

STEVEN HREN, JANET HREN and JOHN DOES 1-10,

Defendants and Appellees.

APPEAL FROM:     District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDV 13-658
Honorable Michael B. Hayworth, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Neal P. DuBois, Christopher A. Hoffman, Sutton, DuBois & Mills, PLLC,
Great Falls, Montana

For Appellees:

Patrick R. Watt, Mark T. Wilson, Jardine, Stephenson, Blewett & Weaver,
P.C., Great Falls, Montana

Submitted on Briefs:  May 4, 2016

Decided:  July 12, 2016

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1     Carl Algee appeals an order of the Eighth Judicial District Court, Cascade County, granting partial summary judgment to Steven and Janet Hren. The summary judgment order dismissed all of Algee's claims, while leaving some of the Hrens' claims for further adjudication. The District Court certified the order as final pursuant to M. R. Civ. P. 54(b) to determine whether it correctly invoked the doctrine of laches to dismiss most of Algee's claims. We address the following issue on appeal:

> *Whether the District Court properly applied the doctrine of laches to bar all of Algee's claims not already barred by statutes of limitation.*

¶2     We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3     Algee and the Hrens own adjoining properties. The Hrens' property holds an easement that runs through Algee's land, including along a creek embankment. In August of 2010, the Hrens began to build a road on their easement to access their property. On August 30, 2010, Algee filed a complaint with the Cascade Conservation District (CCD) regarding the Hrens' easement road project. The CCD issued a Stop Work Order. The Hrens ceased construction, altered their plans, and submitted them to the CCD. The CCD further modified the plans before issuing the necessary permit (310 Permit) to continue road construction. On September 21, 2010, Algee received a letter informing him of the approved plan and the issued 310 Permit. The Hrens completed the road along their easement in October 2010, at a cost of approximately $40,000.

2

¶4     On August 21, 2013, Algee sued the Hrens over the easement. Algee's Complaint alleged, in part, that the Hrens destroyed an access trail when constructing the easement road in 2010. On the same date, Algee also filed a Notice of Lis Pendens. The Lis Pendens prevented the Hrens from closing on the sale of their property, which was scheduled for August 26, 2013. On October 11, 2013, the Hrens filed their Answer, Counterclaim, and a Request for a Permanent Injunction. On April 9, 2015, the Hrens filed Defendants' Motion for Partial Summary Judgment on Plaintiff's Claims. On April 20, 2015, the Hrens filed an Amended Answer and Counterclaim through an unopposed M. R. Civ. P. 15(a)(2) motion. The Amended Answer included a Doctrine of Laches affirmative defense.[1]

¶5     On July 28, 2015, the District Court entered its Order Regarding Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion for Partial Summary Judgment on Attorney's Fees Issue. The District Court held that Algee's Trespass and Negligence claims were barred by the statutes of limitation, and Algee's remaining claims were barred by laches. Algee does not appeal from the District Court's order applying the statutes of limitation, but does challenge the Court's ruling with respect to laches. Algee appeals.

---

[1] As an initial matter, we will not address Algee's M. R. Civ. P. 8(c) argument that the Hrens untimely pleaded their laches affirmative defense because Algee raises this argument for the first time on appeal. We "will not put a district court in error for a ruling or procedure in which the appellant acquiesced, participated, or to which the appellant made no objection." *In re Marriage of Deist*, 2003 MT 263, ¶ 31, 317 Mont. 427, 77 P.3d 525 (citation omitted). Algee did not object to the Hrens pleading laches as an affirmative defense in their Amended Answer and we will therefore not review the argument.

**STANDARD OF REVIEW**

¶6 The parties dispute the applicable standard of review. Algee argues that the District Court's order should be reviewed de novo because the appeal is taken from a grant of summary judgment. The Hrens argue that the standard is whether the District Court abused its discretion, relying on *Williard v. Campbell Oil Co.*, 77 Mont. 30, 248 P. 219, 224 (1926). Regarding the appropriate standard of review to apply in this case, *Williard* is inapposite because it dealt with an appeal from a bench trial. *Williard*, 77 Mont. at 33, 248 P. at 220. We have consistently held that an order on summary judgment is reviewed de novo, applying the same criteria as the district court. *Denturist Ass'n of Mont. v. State*, 2016 MT 119, ¶ 7, 383 Mont. 391, __ P.3d __ (citing *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 36, 345 Mont. 12, 192 P.3d 186). Under M. R. Civ. P. 56(c), summary judgment is appropriate where there is a complete absence of genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Lorang*, ¶ 37.

**DISCUSSION**

¶7 *Whether the District Court properly applied the doctrine of laches to bar all of Algee's claims not already barred by statutes of limitation.*

¶8 The doctrine of laches is an equitable remedy—asserted as an affirmative defense under M. R. Civ. P. 8(c)(1)—"by which a court denies relief to a claimant who has unreasonably delayed or been negligent in asserting a claim, when the delay or negligence has prejudiced the party against whom relief is sought." *Anderson v. Stokes*, 2007 MT 166, ¶ 19, 338 Mont. 118, 163 P.3d 1273 (citing *Montanans for Justice v. State*

4

*ex rel. McGrath*, 2006 MT 277, ¶ 23, 334 Mont. 237, 146 P.3d 759, and *Cole v. State ex rel. Brown*, 2002 MT 32, ¶ 24, 308 Mont. 265, 42 P.3d 760).  To determine whether laches applies, a court must find:  (1) the party against whom the defense is asserted lacked diligence in asserting a claim; and (2) that lack of diligence resulted in prejudice to the party asserting the defense.  *Wicklund v. Sundheim*, 2016 MT 62, ¶ 40, 383 Mont. 1, 367 P.3d 403 (citations omitted).  The doctrine of laches' purpose is to "discourage stale demands by the court refusing to interfere where there has been gross laches in prosecuting rights, or where long acquiescence in assertion of adverse rights has occurred." *Montanans for Justice*, ¶ 25 (quoting *Castillo v. Franks*, 213 Mont. 232, 241, 690 P.2d 425, 429 (1984)).  Although time is a factor when determining laches' elements, "[l]aches is not a mere matter of elapsed time, but rather, it is principally a question of the inequity of permitting a claim to be enforced." *Cole*, ¶ 25 (citations omitted).

¶9     One way by which a lack of diligence may be demonstrated is when a claimant contemporaneously believes another is violating his or her right, yet the claimant allows the alleged unlawful act to finalize before objecting to such action.  *See Cole*, ¶¶ 27-30; *Wagner v. Woodward*, 2012 MT 19, ¶¶ 29, 33, 363 Mont. 403, 270 P.3d 21.  In *Cole,* we held that laches barred plaintiffs from challenging the process by which voters approved an initiative that imposed term limits on ten state and federal offices. *Cole*, ¶¶ 1, 42.  The plaintiffs filed suit more than nine years after the challenged election. *Cole*, ¶ 17.  We found that the plaintiffs contemporaneously knew of the election's alleged deficiencies and rejected the argument that the plaintiffs' injury was only realized nine years later

5

when the public officials who were subject to the term limits could not stand for reelection. *Cole*, ¶¶ 27-30.

¶10 In *Wagner*, we held that laches applied when the plaintiffs failed to raise their claim before or during the defendant's construction of a deck and fences on a lot adjacent to the plaintiffs' land because the plaintiffs knew, or should have known, during construction that the defendant was violating the lot's restrictive covenants. *Wagner*, ¶¶ 29, 33. After the defendant completed construction, the plaintiffs sued for a declaratory judgment and injunctive relief because the defendant's eaves—which were constructed ten years earlier—deck, and fences allegedly violated the lot's covenants. *Wagner*, ¶ 8. Although the plaintiffs brought suit only three months after the deck's construction, the plaintiffs failed to claim the eaves violated the covenants for ten years. *Wagner*, ¶ 8. More importantly, the plaintiffs knew the construction would not conform to the covenants while the construction was taking place. *Wagner*, ¶ 28. We found:

> [N]othing in the record . . . indicate[s] that [the plaintiffs] were not aware of [the defendant's] construction projects. The deck extension occurred in June, the west fence in July and the east fence in August. Nothing in the record indicates that [the plaintiffs] notified [the defendant] that they believed his projects violated the covenants; rather, they waited until the projects were completed before bringing this action.

*Wagner*, ¶ 29. Although the plaintiffs waited 10 years to bring their claim regarding the eaves, our analysis focused on their silence during the construction project that they knew violated the covenants.

¶11 In this case, Algee knew or should have known the Hrens were allegedly destroying his access trail while constructing the road easement. He knew where the trail

6

was located because the trail was a selling point when he purchased the property in 2008, and he admitted in his summary judgment brief that the trail's alleged destruction was "primarily why [he] filed suit." Algee knew the Hrens were constructing a road along their easement because Algee was the one who informed the CCD of the construction. Algee then received notice from the CCD that it approved the Hrens' updated plans and allowed them to continue construction. Algee did not notify the Hrens, the CCD, or a district court of his access trail before or during the road easement construction. Algee then waited almost three years before bringing his claim alleging the Hrens destroyed his access trail. As in *Cole* and *Wagner*, Algee lacked diligence in bringing his claim by remaining silent while knowingly allowing the Hrens to allegedly destroy his access trail through road construction. The District Court correctly concluded that Algee's delay in bringing his claim constituted an unexplainable delay of such character as to render enforcement of his asserted right inequitable because Algee allowed the Hrens to complete their road construction and put their property on the market before pointing out the alleged access trail destruction. We therefore next consider whether Algee's lack of diligence prejudiced the Hrens.

¶12     In some instances, the prejudice element can be satisfied if permitting a claim to be enforced would cause inequity. *See Cole*, ¶ 32. In *Cole*, we held that the plaintiffs' unreasonable delay in bringing their claims would prejudice others if successful because "[a]t least some of the executive officers and a large number of state legislators left office in 2000 based upon [the initiative's] presumptive validity." *Cole*, ¶ 32. We stated:

"laches is not a mere matter of elapsed time, but rather, it is principally a question of the inequity of permitting a claim to be enforced." *Cole*, ¶ 32 (citation omitted).

¶13 By contrast, in *Anderson*, we upheld a district court's rejection of a laches defense because the party asserting the defense only used conclusory statements to support the laches prejudice element. *Anderson*, ¶¶ 20-21. In *Anderson*, the defendant asserting laches claimed he would be prejudiced if the plaintiff's claim was enforced because it would "destroy his radio station." *Anderson*, ¶ 20. The defendant presented no evidence explaining how enforcing the claim would destroy his radio station, and we therefore affirmed the District Court's rejection of the defendant's laches defense. *Anderson*, ¶ 21.

¶14 The record in this case evinces the following undisputed facts relevant to the Hrens' claims of prejudice: (1) Algee knew of his alleged access trail before the Hrens began the easement road construction; (2) Algee did not inform the Hrens of the access trail before or during the process in which the Hrens applied for and received the necessary 310 Permit to build the easement road; (3) the Hrens spent approximately $40,000 to complete the easement road; (4) Algee waited almost three years to sue the Hrens regarding the easement road, which was the first time Algee informed the Hrens about the access trail; (5) several days before Algee filed the lawsuit and the Lis Pendens, the Hrens moved their furniture to a new home in anticipation of closing on a buy/sell agreement; (6) Algee's suit encumbered the Hrens' property five days before the buy/sell agreement's closing date; and (7) the Hrens' property sale did not close. Although Algee labels the facts regarding the Hrens' property sale as "self-serving," he did not dispute them below; he only asserted that he lacked knowledge of the buy/sell agreement when

8

filing the Lis Pendens. Algee may not dispute these facts for the first time on appeal. *See Eitel v. Ryan*, 231 Mont. 174, 178, 751 P.2d 682, 684 (1988) (holding that this Court will not fault a district court's consideration of affidavits not objected to below).

¶15 The undisputed facts demonstrate that Algee's lack of diligence in bringing his claim prejudiced the Hrens. His lack of diligence will also prejudice the Hrens if the claim is enforced because they will have to redo a portion of the easement road or compensate Algee for the access trail, even though the issue could have been avoided or addressed before the road's completion had Algee acted timely. Therefore, the Hrens have satisfied the second element.

¶16 Algee contends that the District Court resolved disputed material facts, therefore going beyond summary judgment's scope. Algee argues the District Court incorrectly relied on three assertions of past prejudice the Hrens suffered: (1) having to apply for a 310 permit; (2) spending approximately $40,000 completing the easement road; and (3) losing the ability to sell their home free of the Lis Pendens filed days before closing on their buy/sell agreement. We disagree.

¶17 The District Court did not resolve disputed facts, as Algee contends; it merely evaluated the undisputed facts in its laches analysis and determined that enforcing Algee's claim would prejudice the Hrens because it would force them to redo a completed road due to Algee's failure to timely notify them of the alleged access trail.

¶18 Regarding the undisputed fact that the Hrens' buy/sell agreement fell through because of Algee's suit, Algee contends he lacked knowledge of the buy/sell agreement and therefore should not suffer from the agreement falling through days after he brought

9

suit. Algee's knowledge of the buy/sell agreement is beside the point. Algee undisputedly knew of his access trail and its location, knew the easement road would interfere with the trail, kept silent during the 310 Permit acquisition, and kept silent during the easement road construction.

¶19 Algee next contends that the District Court's conclusions of law pertaining to prejudice are inconsistent with this Court's lengthy timeframe for finding a delay that may warrant a laches application. We disagree. When analyzing laches, we focus on a claimant's lack of diligence in bringing a claim, and the prejudicial effect that has on the party asserting laches. Although the length of time is a consideration, it is not a dispositive one. *See Wagner*, ¶¶ 27-31.

¶20 Finally, Algee argues that a court may not apply laches when a claim's applicable statute of limitations has not run. This argument has no merit. Laches is an equitable defense focusing on a case's individual circumstances and "the period of time necessary to invoke laches is not measured by [a] statute of limitations." *Shimsky v. Valley Credit Union*, 208 Mont. 186, 192, 676 P.2d 1308, 1311 (1984) (holding that laches barred a claim brought within the applicable statute of limitations because the defendant paid a creditor twenty-seven payments after receiving notice of an increased interest rate which he disputed two years after he should have learned of the increase); *Montgomery v. First Nat'l Bank of Dillon*, 114 Mont. 395, 136 P.2d 760 (1943).

## CONCLUSION

¶21 For the foregoing reasons, we hold the District Court did not err by granting summary judgment in favor of the Hrens on all of Algee's claims not already barred by statutes of limitation.

¶22 Affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ LAURIE McKINNON

11